IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JILL BURELLA, *Individually and as Parent and Natural Guardian of Beth Ann Burella, Danielle Burella and Nicholas Burella,* | )<br>)<br>)<br>) |
| Plaintiff, | ) CIVIL ACTION<br>) No. 00-cv-0884 |
| v. | ) |
| CITY OF PHILADELPHIA, et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

**RUFE, J.**                                                                                         **January 15, 2010**

      Plaintiff Jill Burella filed this action against Defendants City of Philadelphia ("City") and police officers Robert Reamer, Charles Bloom, and Francis Gramlich ("Individual Defendants") in February 2000, alleging violations of the Fourteenth Amendment of the United States Constitution and Pennsylvania state law.[1] Now before the Court is Defendant's Motion to Certify the Court's Interlocutory Order of September 30, 2009 for Appeal.[2] For reasons set forth below, the Motion is denied.

---

[1] Plaintiff also brought claims against Warren Zalut, M.D. and John Does I through IV, naming them as a defendants in her Amended Complaint. (Docket Entry No. 18). On July 25, 2008, however, the parties stipulated to the dismissal of Defendant Zalut and all claims against him. (Docket Entry No. 108). On November 5, 2009, the Court dismissed Defendants John Does I - IV for Plaintiff's failure to show cause as to why the unnamed defendants should not be dismissed from this action. (Docket Entry No. 126).

[2] Docket Entry No. 124. The Court notes Defendants' Memorandum in support of their Motion is actually captioned as Civil Action No. 03-6248 (Chainey v. City of Philadelphia) instead of the instant case. The Court *sua sponte* recognizes this as scrivener's error, as evidenced by the fact that Defendants' corresponding, attached motion and proposed order both contain the correct case caption for this matter.

1

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

This case arises from the events of January 12, 1999, when Plaintiff's deceased husband George Burella ("Decedent"), intentionally shot and seriously injured Plaintiff and then shot and killed himself. On September 30, 2009, the Court issued a Memorandum Opinion[3] to address Defendants' Second Motion for Summary Judgment. The Court herein recites pertinent parts of said Opinion to establish relevant factual and procedural background:

> At the time of the shooting, Decedent was a ten-year veteran of the City Police Department, and he and Plaintiff had three young children, an eleven-year-old daughter, Beth Ann, and six-year-old twins, Nicholas and Danielle...
> Decedent had emotionally and physically abused Plaintiff for years prior to the shooting. The abuse began in 1996....[I]n February of 1996, Decedent was convicted of disorderly conduct for stalking Plaintiff at her workplace and assaulting her male co-worker whom he suspected was having an affair with her. One month later,...Decedent attempted suicide by overdosing on Tylenol tablets. He survived and was admitted to a psychiatric hospital where he was diagnosed with depression after admitting to fighting with and pushing Plaintiff, as well as having minor gambling problems.
> While Decedent was in the hospital, he was visited by Michael Conly, a representative of the City Police Department's Employee Assistance Program ("EAP"), a program designed to assist officers in obtaining help with personal problems. EAP notified the City Medical Department, which placed Decedent on restricted duty and referred him to City doctors for psychological treatment. The doctors eventually cleared him to return to full active duty in August 1996, provided he be evaluated every four months for a period of one year. Decedent was not re-evaluated...
> Decedent's violence towards his wife continued over the next several years and escalated in 1998...
> In early June 1998, Plaintiff contacted the City Police Department's Internal Affairs Division to report the abuse. Afterwards, Decedent contacted and reported to EAP on June 15, 1998. He admitted to striking Plaintiff and was referred to a financial counselor, the legal aid committee as well as a support group to help with his pre-existing gambling problem.
> Later that month, on June 26, 1998, Decedent assaulted Plaintiff and another man at a local bar. Witnesses called 9-1-1, but Decedent left the bar

---

[3] Docket Entry No. 122.

before police officers arrived. When he got home, he phoned Plaintiff and threatened to shoot their son Nicholas if she did not immediately return to the house. After calling 9-1-1, Plaintiff rushed home, where her husband, who was armed with a gun, threatened to shoot her. Before the matter worsened, City police officers arrived. Decedent initially refused the officers' order to surrender, but did so after the officer in charge agreed to report the incident as a domestic disturbance, rather than a more serious offense. Defendant Reamer was one of the officers who arrived at the scene.

After the police officers left, Decedent began beating Plaintiff on their front lawn. Her parents arrived and took her to their house, but Decedent followed them there. Once at her parents' house, Plaintiff tried to call 9-1-1, but Decedent wrestled the phone from her and told the operator that he was a police officer and that everything was under control. As a result, the operator did not instruct police to respond to the situation. Three days later, Plaintiff contacted EAP to report the incident, but EAP failed to notify Internal Affairs and the incident was never investigated.

On July 13, 1998, Decedent called Plaintiff at her place of work in Upper Southampton Township and threatened to kill her. Upper Southampton police officers were called and arrived in time to witness Plaintiff receiving several more threatening phone calls from her husband. The officers called Defendant Bloom, Decedent's commanding officer, to inform him of the incident.

Defendant Bloom became directly involved in the situation on August 13, 1998, when Northampton police officers arrested Decedent for assaulting Plaintiff in Bucks County. The officers released Decedent into the custody of Defendant Bloom, who escorted him home. Three days later, on August 16, Decedent called Plaintiff while she was visiting his parents with the children and again threatened to kill her. When he went to his parents' house, Northampton police officers responding to an emergency call escorted him to his car, unloaded his firearm and placed it in the trunk of the car. Shortly thereafter, officers found him driving in the vicinity of the house with his gun re-loaded and placed on the backseat of his car. Officers took him to a local hospital, but he was released shortly thereafter when his family declined to have him committed for fear that he would lose his job. After being notified of the incident, Defendant Bloom ordered Decedent to submit to a psychiatric evaluation.

Later that month, on August 20, 1998, Decedent admitted himself to a psychiatric hospital. He left on August 24, 1998, after four days of treatment, only to return later that day. He was discharged on August 25, 1998 with a diagnosis of explosive personality disorder and a guarded prognosis. Several days later, City psychologists examined Decedent and concluded that he should be monitored for the next two years. After one follow-up appointment with City doctors in September 1998, Decedent was

3

returned to full active duty but did not return for another evaluation or treatment.

On December 24, 1998, Decedent again assaulted Plaintiff...When City police officers arrived, they allowed him to leave with the couple's youngest daughter. They then took Plaintiff and her two other children home, and left. Decedent then resumed beating her in their home.

Over the course of the next few weeks, Plaintiff obtained three protection from abuse orders ("PFAs") relevant to this lawsuit. On January 2, 1999, she obtained an emergency ex parte PFA from the Philadelphia Court of Common Pleas that prohibited her husband from "abusing, harassing, stalking and/or threatening" her, and from "living at, entering, attempting to enter or visiting" the couple's home. The order further provided that officers "shall ... arrest the defendant if he/she fails to comply with this Order." The next day, Defendant Reamer served the order on Decedent, who, according to Plaintiff, immediately violated it by shouting at and threatening her. Despite witnessing the alleged violation, Defendant Reamer permitted Decedent to enter the couple's house. The Burella children were present during the events of January 3, 1999.

On January 4, 1999, Plaintiff obtained another temporary PFA, which essentially repeated the terms set forth in the January 2 order. In addition, the court awarded her temporary custody of the couple's three children, prohibited Decedent from having "any contact" with her, and ordered him to relinquish all guns other than his service weapon, which he was required to turn over to his commanding officer at the end of every shift. The order also stated that "[t]his Order shall be enforced by any law enforcement agency in a county where a violation of this Order occurs."

Later that day, Plaintiff called 9-1-1 after receiving threatening phone calls from Decedent. After officers arrived, and while in their presence, she received several more calls from her husband. The officers told her they could not do anything unless her husband was physically present. When Plaintiff called the police the next day, again they told her that nothing could be done unless her husband was physically present at her house. The Burella children were also present during the events of January 4, 1999.

On January 8, 1999, Plaintiff obtained a final PFA. Four days later, following an appointment with a psychiatrist at the City Medical Department, Decedent went to the house he formerly shared with his wife and shot her in the chest. He then immediately shot and killed himself. Although she suffered serious injuries, Plaintiff survived the shooting. The Burella children were not present at the time of the shooting.

In February 2000, Plaintiff filed a complaint in Pennsylvania state court. After the case was removed to federal court, she filed an eight-count amended complaint... The City and Individual Defendants moved for summary judgment on all counts asserted against them. On December 17,

4

> 2003, the court granted their motion in part as to Defendant Bloom on Count I and all claims of negligence or negligent infliction of emotional distress in Count VII, but denied it on all other counts. Individual Defendants filed an interlocutory appeal with the Third Circuit as to the Court's order denying them qualified immunity on Counts I and IV.
>
> On September 13, 2007, the Third Circuit filed an opinion reversing the trial court's denial of qualified immunity. The Third Circuit then remanded [the state equal protection] matter for further proceedings consistent with its opinion...
>
> While on appeal, this matter was reassigned to this Court. Upon remand, the Court ordered the parties to brief their positions as to the effect of the Third Circuit rulings. As the parties agreed that the Third Circuit opinion mandated that Individual Defendants were entitled to qualified immunity and judgment as a matter of law on Counts I and IV of Plaintiff's and Guardian's claims, the Court...dismiss[ed] those claims. As for the remaining claims, however, the parties dispute[d] whether they [were]...viable in light of the Third Circuit's decision. As a result, the Court allowed the City and Individual Defendants to renew their motion for summary judgment on the same.

On September 30, 2009, the Court issued a Memorandum Opinion granting summary judgment on Counts I - VI and denying summary judgment as to Plaintiff's Pennsylvania law claim for intentional infliction of emotional distress filed on her own behalf.[4]

On October 15, 2009, Defendants filed the instant Motion to Certify the Court's Interlocutory Order of September 30, 2009 for Appeal. The Court has carefully reviewed Defendants' Motion, Plaintiff's Response,[5] and all accompanying material, and this matter is now ready for disposition.

## II. STANDARD OF REVIEW

A district court may, in its discretion, certify an issue for interlocutory appeal under 28 U.S.C. § 1292(b) when there is a controlling question of law on which there are substantial grounds

---

[4] In the same Opinion, the Court granted summary judgment as to Plaintiff's claims for negligent infliction of emotional distress and intentional infliction of emotional distress filed on her children's behalf as their Guardian.

[5] Docket Entry No. 127.

for difference of opinion and an immediate appeal may materially advance the ultimate termination of the litigation.[6] Section 1292(b) should only be used sparingly and in exceptional circumstances.[7] "Decision to certify an interlocutory order for appeal under §1292(b) 'rests within sound discretion of the trial court', and 'the burden is on the party seeking certification to demonstrate that exceptional circumstances justify departure from basic policy against piecemeal litigation and of postponing appellate review until after the entry of final judgment.'"[8]

## III.  DISCUSSION

Defendants seek interlocutory certification of the Court's September 30, 2009 Order pursuant to 28 U.S.C. § 1292(b). In its underlying summary judgment motion, Defendants argued that the Court should grant its motion as to Plaintiff's state law claim of intentional infliction of emotional distress against the individual police officers on the basis that King v. Breach[9] requires a plaintiff show that the police officers "desired" the end result (e.g. for Jill Burella to be shot), and that no reasonable jury could conclude that the police officers had such desire. The Court rejected Defendants' arguments on the basis that Plaintiff adduced sufficient evidence from which a reasonable juror could find that the Individual Defendants intentionally engaged in extreme or

---

[6] See L.R. v. Manheim Twp. Sch. Dist., 540 F. Supp.2d 603, 608 (E.D. Pa. 2008).

[7] See Hulmes v. Honda Motor Co., 936 F. Supp. 195, 208 (D.N.J. 1995)(finding that an appeal under section 1292(b) is an exception to the important policy of avoiding "piecemeal appellate review of trial court decisions"), aff'd 141 F.3d 1154 (3d Cir. 1998).

[8] Manheim Twp. Sch. Dist., 540 F. Supp.2d at 608 (quoting Douris v. Schweiker, 229 F. Supp.2d 391 (E.D. Pa. 2002)).

[9] 540 A.2d 976 (Pa. Commw. Ct. 1988).

6

outrageous conduct with the intention to cause Plaintiff severe emotional distress.[10] The Court further determined that "desire" was not the proper legal standard in police conduct cases. Rather, in accordance with the Pennsylvania Supreme Court, a lesser standard is applicable.[11] Defendants now argue that this Court should grant their Motion for certification because the Court's Order of September 30, 2009 "involves a controlling question of law as to which there are substantial grounds for difference of opinion, and...an immediate appeal may materially advance the ultimate termination of this case."[12] Plaintiff argues in opposition that Defendants cannot meet the requirements of §1292(b), nor have they shown that this matter falls into the realm of "sparingly and exceptional circumstances" necessary for an interlocutory appeal.

   A.   **Controlling Question of Law**

Defendants assert that the question of whether the proper legal standard in this case is "desire" or something less than desire is a controlling question of law. Citing Bright, Defendants contend that "there is substantial grounds for difference of opinion as to whether Renk can be read to preclude the 'desire' standard in police conduct cases such as the current case" based on "post-Renk" Third Circuit authority for "applying the 'desire' standard to a willful misconduct analysis

---

[10] The Pennsylvania Supreme Court in Renk v. City of Pittsburg, 641 A.2d 289, 293 (Pa. 1994) held that the King equation of willful misconduct with intentional tort "has no validity in the context of a lawsuit based upon police conduct." Interpreting Renk, the Third Circuit has required a showing of an intention to do what is know to be wrong." In re City of Philadelphia Litig., 158 F.3d 723, 728 (3d Cir. 1998); see also Sameric Corp. of Del. v. City of Philadelphia, 142 F.3d 582, 600-01 (3d. Cir. 1998) (requiring defendant members of the Philadelphia Historical Commission "actually knew their conduct was illegal"); cf. Bright v. Westmoreland, 443 F.3d 276, 287 (3d Cir. 2006) (citing the language of King when analyzing the immunity of a police officer who failed to arrest a parolee before the parolee murdered plaintiff's daughter); Brown v. Muhlenberg Twp., 269 F.3d 205, 214 (3d Cir. 2001)(citing the language of King when analyzing the immunity of a police officer who shot plaintiffs' dog).

[11] See Hoy v. Angelone, 720 A.2d 745, 753 (Pa. 1998)(holding that one who by extreme or outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm).

[12] Def.'s Mem. in Supp. of Mot. to Certify Interlocutory Order at 2.

7

in a police conduct case."[13] As Plaintiff points out, however, a closer review of Bright demonstrates reliance upon Robbins v. Cumberland County Children & Youth Services[14], a Pennsylvania Commonwealth Court case, which relied upon a Pennsylvania Supreme Court case that predates Renk by several decades.[15]

Citing Russoli v. Salisbury Twp.,[16] Defendants further argue that "several courts since Renk, have specifically noted that 'there seems to be some disagreement whether Renk applies only to police and other law enforcement, whether it applies to them only in certain cases, or whether it applies to all actions of employees of local agencies in the scope of their duties.'"[17] The Court, however, notes that the district court in Russoli ultimately found it was bound to follow the Renk standard, and in doing so, denied defendant police officers' summary judgment motion for intentional torts.[18] The court in Russoli further found that an inquiry into whether there was a "willful misconduct" requires a finding of fact as to the state of mind of the officers and therefore, must be performed by the jury if there is sufficient evidence in the record to support such a finding by a reasonable jury."[19] Here, as the Court articulated in its September 30, 2009 Memorandum Opinion, the record establishes that Plaintiff has indeed adduced sufficient evidence to create a genuine issue of material fact as to whether Individual Defendants' actions were willful misconduct.

---

[13] Def.'s Mem. at 3, 4.

[14] 802 A.2d 1239, 1252-53 (2002).

[15] See e.g., Evans v. Philadelphia Transp. Co., 212 A.2d 440 (1965).

[16] 126 F. Supp.2d 821(E.D. Pa. 2000).

[17] Def.'s Mem. at 4 (quoting Russoli, 126 F. Supp.2d at 868).

[18] See Russoli, 126 F. Supp.2d at 869.

[19] Id.

8

Moreover, in Johnson v. Jones,[20] the U.S. Supreme Court opined that a § 1292(b) interlocutory appeal, where the only appealable issue is one of fact, may not be well suited for appellate review.[21] The difference of opinion required for an interlocutory appeal under §1292(b) must arise out a genuine doubt as to the correct legal standard.[22] The Court finds no conflict in the controlling law on this issue and agrees with Plaintiff's assertion that certification should not be granted merely because Defendants disagree with the ruling of this Court.[23]

    **B.    Material Advancement of The Case**

As their second basis for certification of an interlocutory appeal, Defendants argue that an immediate appeal may materially advance the ultimate termination of this case. Defendants contend that resolution of the individual police officers' claim of immunity would materially advance this matter because it would end the case and avoid the need for a trial altogether. Defendants assert that the need for an expensive and lengthy trial could be obviated if the Third Circuit were to conclude on interlocutory appeal that the "desire" standard applied in Bright also applies to the instant case.

Plaintiff, however, argues that an interlocutory appeal can hardly advance the ultimate termination of a case where discovery is complete and the matter is ready for trial. Plaintiff asserts that granting Defendants' Motion would result in even further delay in resolution of this matter, which has been pending for nearly ten years, by seeking "Third Circuit review of a state law question where the Pennsylvania Supreme Court has clearly articulated the standard for intentional infliction

---

[20] 515 U.S. 304 (1995).

[21] See Id. at 309-311.

[22] Id.

[23] See Bush v. Adams, 629 F. Supp. 2d. 468, 475 (E.D. Pa . 2009).

of emotional harm involving police misconduct which this Court correctly applied in denying summary judgment" on this issue.[24] As discovery has in fact been long completed and this case is ready for trial, the Court agrees with Plaintiff's assertion that an interlocutory appeal at this time would very likely result in significant delay rather than a material advancement of the litigation. Delay is a particularly strong ground for denying appeal if certification is sought from a ruling made shortly before trial.[25] As the bulk of Plaintiff's claims have been dismissed and the sole remaining triable issue is limited to one count of intentional infliction of emotional distress, the Court disagrees with Defendants' assertion that an expensive, lengthy and complicated trial will result if certification of its interlocutory appeal is not granted. Therefore, the Court finds that an interlocutory appeal would not materially advance the ultimate termination of this litigation, but would instead likely result in further considerable delay.

IV. CONCLUSION

For the foregoing reasons, the Court finds that Defendants failed to meet the requirements of §1292(b). Defendants also failed to demonstrate exceptional circumstances that justify departure from basic policy against piecemeal litigation and of the postponing appellate review until after the entry of final judgment. Accordingly, Defendants' Motion is denied.

An appropriate Order follows.

---

[24] Plaintiff's Mem. In Supp. of Response to Def.'s Mot. for Leave to Take an Interlocutory Appeal at 4.

[25] See Hulmes, 936 F. Supp. at 211 (denying certification where case had been proceeding for three years and was trial ready); See also Singh v. Daimler-Benz AG, 800 F. Supp. 260, 263 (E.D. Pa. 1992)((denying certification and noting the possibility that if Third Circuit affirms, the litigation will not be advanced, but would instead be considerably delayed), aff'd, 9 F.3d 303 (3d Cir. 1993)).